# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

United States of America,

    Plaintiff,

    v.                                                  Case No. 1:17cr060

Samuel Whitt,                                   Judge Michael R. Barrett

    Defendant.

## ORDER

This matter is before the Court on Defendant's Motion to Suppress Evidence Based on Invalid Search Warrant. The Motion (Doc. 24) is fully briefed and ripe for disposition.

### I. BACKGROUND

In this case, Defendant allegedly defaced real property in a manner that violates 42 U.S.C. § 3631, a section of the Fair Housing Act that illegalizes injury or intimidation to a person based on, *inter alia*, color or race.

In August 2016, the Defendant moved into an apartment in the Price Hill neighborhood of Cincinnati. The apartment is owned by a married couple. The wife is white, and the husband is black. On November 22, 2016, the Defendant and his girlfriend were evicted for failing to pay their rent. The following day, the owners of the apartment traveled out of town. Upon their return on November 28, 2016, the owners found the apartment had been destroyed. In addition to the substantial damage done to the apartment, spray paint had also been used, leaving swastikas and messages including "white power" and "die nigger" on the walls.

During the course of their investigation, the FBI obtained a search warrant for the

1

Defendant's Facebook account. Ultimately, the government's search of Defendant's Facebook account yielded racist statements, such as "If u ain't white u ain't right" and the word "nigger."

## II. ANALYSIS

Defendant argues that the evidence seized from his Facebook account must be suppressed because: (1) the affidavit in support of the application or search warrant failed to establish a nexus between the alleged crime and the evidence sought; (2) the warrant was overbroad; and (3) the good faith exception fails to save the fruits of the search from exclusion.

### a. Nexus

The Parties do not appear to dispute that Defendant has a certain expectation of privacy in the non-public portions of his Facebook account, such that the seizure of evidence at issue triggers the Fourth Amendment. The question is whether the affidavit in support of the search warrant establishes the requisite nexus between the place to be searched and the items to be seized.

The Fourth Amendment requires that, where an affidavit is submitted as the basis for probable cause in support of a search warrant, the affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (quoting *Gates*, 462 U.S. at 239). The affidavit must also "establish a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched." *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010). "The connection between the [location to be searched] and the evidence of

2

criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016).  "If the affidavit does not present sufficient facts demonstrating why the [agent] expects to find evidence in the [location to be searched] rather than in some other place, a judge may not find probable cause to issue a search warrant."  *Id*.  "In other words, the affidavit must suggest 'that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located [in the location to be searched] and not merely 'that the owner of property is suspected of crime.'"  *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006).

Defendant argues that the government's search of his Facebook data was improper because "nothing about the manner in which the offense was committed indicates that the perpetrator used social media."  (Doc. 24; PAGEID# 62).  Defendant further argues that the government tacitly admitted in the affidavit to engaging in a "fishing expedition," when the agent stated that a search of the Facebook account will allow it to determine the "'who, what, why, when, where, and how' of the criminal conduct under investigation."  (*Id.* at 62).  According to Defendant, the government has thus engaged in "general rummaging" that is clearly prohibited by the Fourth Amendment. (*Id.*) (citing *Arizona v. Gant*, 556 U.S. 443, 467 (1971)).  Defendant asserts that, "[i]f this Court upholds that warrant, it is essentially ruling that any suspect's social media can be searched, regardless of whether the crime itself has a connection to the electronic data." (Doc. 24: PAGEID# 62-63).

The government counters that "evidence of racial animus is an element of the offense" for which Defendant has been charged.  (Doc. 26; PAGEID# 110).  According to the government, the search of Facebook is "akin to searching . . . cellphones or

3

rolodexes . . . to look for associates, text messages, and evidence of [Defendant's] whereabouts" at the time of the crime. (Doc. 26; PAGEID# 110). It further argues that "[g]iven the different type of information collected by Facebook and the crime under investigation, it was certainly reasonable for the Magistrate Judge to infer that Facebook could at the very least identify Whitt's associates, ideological interests, and his past whereabouts just like a rolodex or daily planner could." (*Id.*)

At the outset, the Court disagrees with Defendant to the extent that he argues that the crime itself must involve the use of social media for there to be probable cause to search Facebook. At the same time, the Court also disagrees with the government to the extent that it suggests that probable cause to search the social media of a suspect automatically exists, simply because Facebook stores ample information that might help identify the suspect's associates, ideology/past statements, or past whereabouts. For the requisite nexus to exist – regardless of whether the underlying crime requires the use of social media or an electronic device – the affidavit in support of the search warrant must establish *why* the government believes that relevant evidence may reside on the particular suspect's Facebook account. *See, e.g.*, *United States v. Arnold*, No. 15-20652, 2017 U.S. Dist. LEXIS 148120, at *7 (E.D. Mich. Sept. 13, 2017) (denying motion to suppress Facebook evidence in drug conspiracy case, where affidavit cited information from defendants' publicly available profile including a post accusing another individual of being a "federal informant"); *United States v. Yelizarov*, 2017 U.S. Dist. LEXIS 110174, at *4-5 (D. Md. July 17, 2017) (denying motion to suppress Facebook evidence where the affidavit cited information from suspect's publicly available Facebook profile, and a statement that "Defendant has a history of boasting about his

4

crimes to others"); *United States v. Ortiz-Salazar*, No. 4:13CR67, 2015 U.S. Dist. LEXIS 57913, at *8 (E.D. Tex. May 4, 2015) (recommending denial of motion to suppress Facebook evidence, where detective cited information gleaned from defendant's publicly available Facebook profile). *Accord*: *United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015) (affirming denial of motion to suppress evidence seized from cell phone; reasoning that nexus requirement was met because agent averred that "[defendant] and his co-conspirators frequently used cell phones to communicate" and defendant "was using this particular burgundy Kyocera Torino cell phone when officers seized it incident to his arrest").[1]

      The Court finds the analysis in *Arnold* particularly instructive. In *Arnold*, Defendant Arnold and Defendant Adams were suspected members of the Seven Mile Blood ("SMB") gang and accused of drug-related violations of the RICO Act. The magistrate judge signed a search warrant authorizing the search of 42 Facebook accounts, including accounts belonging to the defendants. *Id*. at *3. In support of the warrant, the agent submitted an affidavit: (1) outlining "his experience in investigating gangs in general and his experience in observing their use of social media in furtherance of their organizations"; (2) describing his past experience with the SMB's "use of Facebook to post photographs and videos of gang colors, hand signs, memorials to dead friends, their organization and firearms and narcotics"; (3) describing Defendant Adams' public Facebook profile as containing, *inter alia*, two pictures of

---

[1] This Court has previously declined to suppress evidence obtained from Facebook – finding the requisite nexus – but in that case the crime itself involved the use of social media. *United States v. Lowry*, 2015 U.S. Dist. LEXIS 93257, *6-7 (S.D. Ohio July 17, 2015), *affirmed* 2017 U.S. App. LEXIS 21346.

5

former SMB members, one picture of a current member, pictures of codeine bottles, and a post accusing another individual of being a "federal informant"; and (4) describing Defendant Arnold's public Facebook profile as containing a picture of him wearing a red and black shirt with the number "55" on the front, "which is consistent with the SMB/Hob Squad." *Id.* at *3-5.

Defendants Arnold and Adams moved to suppress the fruits of the search, arguing that the warrant authorizing the Facebook searches was akin to a warrant authorizing the search of a "residence for drugs or weapons simply because the defendant lived there." *Id.* at *8 (citing *United States v. Bethel*, 245 F. App'x 460 (6th Cir. 2007)). By invoking the foregoing language from *Bethel*, defendants were arguing that the affidavit failed to establish the requisite nexus between the evidence sought and the place to be searched. The court rejected this argument:

> "In this case, the illegal activity the government believes it will find on the private Facebook Accounts is evidence of membership in a criminal enterprise engaged in RICO conspiracy, as well as evidence of predicate offenses by SMB members. An element of Count One of the government's RICO conspiracy case that they will have to prove at trial is the existence of an association-in-fact enterprise. This charge requires proof of 'a continuing unit that functions with a common purpose.' *Boyle v. United States*, 556 U.S. 938, 948, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009). The fact that the defendants [publicly] posted photographs of themselves wearing gang clothing or posted statements that acknowledge the existence of, and their involvement with, the Seven Mile Bloods, their various monikers such as "55", or statements referring to fellow co-conspirators by their gang names can be used by the government to demonstrate that this enterprise exists. The averment that gangs, including the SMB gang, use social media to communicate with one another about their criminal activities, differentiates the search warrant Affidavit in this case from *Bethel*. The nature of social media is that it connects people. Importantly, the owner of a Facebook

6

> account must grant others access to his or her private postings. Under the totality of the circumstances, the Court finds the search warrant is supported by probable cause.

*Arnold*, 2017 U.S. Dist. LEXIS 148120, at *9-10. Ultimately, the court agreed with the government that the "content of the public accounts leads rationally to the conclusion that the private accounts contain similar or even more inculpatory evidence." *Id*. at *8.

Similar to the agent in *Arnold*, the agent in this case sought a search warrant for Defendant's Facebook account, presumably believing that evidence relating to an element of the suspected crime (here, "racial animus") may reside in the non-public portions of the account. However, the agent's affidavit was otherwise devoid of information explaining *why* the agent believed such evidence may reside in Defendant's Facebook account, beyond averments regarding her general experience in law enforcement and Facebook's ability to capture potentially incriminating information. Regarding the latter, the affidavit details – in approximately 19 paragraphs – Facebook's general ability to capture any user's personal identifiers, groups, instant messages, photographs, videos, invitations to social "events," "check ins" at particular locations, etc. Again, the affidavit states that a search of the Facebook profile may allow the government to determine the "who, what, why, when, where, and how" of Defendant's suspected crime. However, if the Court accepts the government's argument regarding the existence of probable cause, the 19 Facebook-related paragraphs in the affidavit could be dropped into virtually any affidavit in support of a search warrant where an individual is suspected of a crime, in order to search a suspect's Facebook account. If it were this easy to obtain such a warrant for Facebook information, the Court is hard-pressed to determine why the courts in *Arnold*, *Yelizarov*, and *Ortiz-Salazar* even

7

bothered performing an analysis of the nexus requirement.

Ultimately, the government would have this Court hold that establishing a nexus between the place to be searched (i.e., a particular suspect's Facebook account) and the items to be seized has become superfluous, simply by virtue of Facebook's tremendous capability to capture and store information relating to *any* suspect's means, motive, and opportunity. While there is relatively little from the Sixth Circuit regarding Facebook, its other jurisprudence reveals that the nexus requirement is alive and well. For example, the Sixth Circuit in *Bass* cited the agent's *specific* averments regarding the *particular* cell phone at issue before affirming the district court's denial of the motion to suppress. Why would such an analysis be required for cell phones, but not Facebook accounts? The government's argument obviates any constitutional protection for social media. This Court declines to so hold. While the affidavit in this case sets forth the broad capabilities of Facebook, it (unlike the affidavit in *Arnold*) fails to take the additional step of establishing information known to the agent making it likely that "specific" evidence is likely to reside in Whitt's particular Facebook account. *McPhearson*, 469 F.3d at 524.

Accordingly, the Court finds the requisite nexus lacking.

### b. Good Faith

Having found the requisite nexus lacking, the Court turns to the good faith exception to the exclusionary rule. Where the warrant fails to meet the nexus requirement, or is overly broad, the exclusionary rule does not apply where the law enforcement officers executing the search warrant acted in good faith in relying on the search warrant. *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 82 L. Ed. 2d

8

677 (6th Cir. 1984). The *Leon* case describes four situations where an officer's reliance on an invalid warrant cannot be considered objectively reasonable:

> (1) When the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia or probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

*Id.* at 914-15.

The Supreme Court has held that lower courts determining whether to exclude evidence should use a cost-benefit analysis focused on the flagrancy of police misconduct. *Davis v. United States*, 564 U.S. 229, 238, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011). Evidence should not be excluded "to deter police misconduct unless the officers engage in deliberate, reckless, or grossly negligent conduct." *United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010) (citation omitted); *see also United States v. Powell*, 847 F.3d 760, 772 (6th Cir. 2017).

Here, the search warrant application was not so lacking in indicia of probable cause as to render reliance on the warrant entirely unreasonable. Indeed, the warrant detailed significant information connecting Defendant to the underlying crime. That information alone gives rise to some degree of probable cause—the issue is that the warrant does not connect the probable cause relating to the suspect to the *particular* place to be searched. While Sixth Circuit jurisprudence on residential and other searches of a suspect is well-developed, Sixth Circuit jurisprudence on searching the Facebook account of a suspect is less so. It appears that the officer believed, in good

faith, that her detailed paragraphs regarding the suspect's connection to the underlying crime, and Facebook's capabilities to capture incriminating information, was enough to establish probable cause.  Indeed, the agent did an excellent job of showing why Facebook is a useful tool for capturing evidence for suspects in general.  The agent's shortcoming was that she failed to take the extra step regarding Whitt's particular Facebook account.  Even if hindsight shows that the requisite nexus was lacking in light of cases such as *Arnold*, it was not unreasonable for law enforcement to rely on the warrant at the time, as the government persuasively argues that the affidavit identified significant information regarding the suspect and Facebook's capabilities.

Furthermore, even if the Court assumes for the sake of argument that the warrant was also overly broad, the warrant is not doomed by such overbreadth.  Lowry, 2017 U.S. App. LEXIS 21346, at *5.  Any defects were neither apparent on the face of the warrant nor the result of intentional misinformation; therefore, the good-faith exception is applicable.

### III. CONCLUSION

Therefore, in accordance with the above, the Motion to Suppress (Doc. 24) is **DENIED**.

**IT IS SO ORDERED.**

      *s/Michael R. Barrett*
**Hon. Michael R. Barrett**
**United States District Judge**