# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  Plaintiff,  vs.  **SAMUEL WHITT,**  Defendant. | **CASE NO. 17-CR-0060(MRB)**  **JUDGE BARRETT**  United States Sentencing Memorandum |

The United States respectfully submits its' sentencing memorandum. For the reasons set forth below, the Court should accept the terms of the defendant's plea agreement and impose a sentence of 60 months imprisonment followed by 3 years of supervised release and restitution in the amount of $66,250.

**Respectfully submitted,**

BENJAMIN C. GLASSMAN
UNITED STATES ATTORNEY


/s/ *Kyle J. Healey*
KYLE HEALEY (0083794)
Assistant United States Attorney
221 East 4th Street, Suite 400
Cincinnati, OH 45202
Phone No.: (513) 684-3711
Fax No.: (513) 684-6710
Email: KHealey@usa.doj.gov

**MEMORANDUM**

I. **Background**

Defendant, Samuel Whitt ("Whitt"), pled guilty to count one of the indictment which alleged Criminal Interference with the Right to Fair Housing in violation of 42 U.S.C. § 3631. Pursuant to an 11(c)(1)(C) plea agreement, the parties agreed the Court could impose a sentence not exceeding 60 months imprisonment. The length of supervised release is also to be decided by the Court.

Given the serious, hateful, and dangerous nature of Whitt's crime, the United States request the Court impose a sentence of 60 months imprisonment to be followed by 3 years of supervised release. Additionally, the Court should order Whitt to pay $66,250 in restitution with $36,033.02 going to the victims and $30,216.98 going to their insurance company.

II. **Sentencing Factors**

The factors to be considered for sentencing under 18 U.S.C. § 3553(a) include the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, the need to deter the defendant and others, and the need to protect the public from the defendant's crimes.

*The Crime*

In 2016, Victim A, an African American male, returned from thanksgiving vacation to check on his two family rental property on Seton Avenue in the Price Hill neighborhood of Cincinnati, Ohio ("Price Hill house"). What he encountered at the Price Hill house was an exceedingly disturbing crime. Cans of paint were splattered on the walls, stairs, and appliances. Large holes were beaten into walls. The stairwell banisters were broken. The carpet was torn.

Quikrete had been poured in the drains and toilet. The plumbing traps were removed from two sinks and the water was left running causing the ceiling to collapse. The floors sustained water damage and the basement flooded. A butcher knife was menacingly stabbed into the floor. The gas to the stove on the 2nd floor unit was left on with a candle next to it while the smoke alarm above had been ripped off the ceiling. Spray-painted ominously on the walls were the messages "die nigger," "nigger nigger," "white power," "slum lord," and swastikas.

### *Victim Impact*

The victims losses from Whitt's hatred exceeds dollars and cents. The Price Hill house was not some nondescript asset in the Victims business portfolio. It had sentimental value. Their daughter recently resided there. After the untimely passing of their son, the Victims spent numerous holidays at the Price Hill house as they found it too emotionally difficult to be in their own home. To see the Price Hill house vandalized with the same hatred and bigotry which they believe contributed to their sons untimely death struck too close to home. To the Victims this was not just vandalism. It was not just the cost of being a landlord. It was a personal attack on their family and their identity.

The Victims have lamented how Whitt's crime has changed them and their business practices. It diminished their trust in society. They now thoroughly scrutinize their tenants and they are less willing to give others a second chance. While money restored the Price Hill house, it did not restore their trust in society or sense of belonging to this community.

### *Samuel Whitt*

Samuel Whitt has an established history of vandalizing property with racist invective and insignia. One night in June 2013, Whitt (then 37 years old) and a friend engaged in a drunken spree of vandalism in the Price Hill. They spray-painted apartment buildings, cars, street signs,

and St. Williams Church and grade school with various graffiti. Included among the graffiti were gang signs, the initials "A.B.," in reference to the Aryan Brotherhood, repeated use of the word "nigger," and a swastika. Yet, Whitt's conduct is this case was more targeted and substantially more dangerous. He left the gas running on the stove with a candle. Had the conditions aligned, the Price Hill house could have caught fire or exploded. Combine these actions with the message "die nigger" and Whitt's depraved intention were clear.

Whitt's history of racist conduct is only surpassed by his history of crime. As the pre-sentence report indicates, he's been arrested and jailed frequently throughout his life. He's lacked any sort of stable employment and he provides nothing to the children he's fathered. Despite the lack of achievements in his life, Whitt believes he has some innate superiority and is comfortable denigrating minorities.

### *The Community*

Whitt's hate crimes not only affected the victims, but had a significant impact on the community. As research from the University of Sussex demonstrates, the damage to the community from a hate crime exceeds that of other crimes. (The Sussex Hate Crime Project – Final Report January 2018.) These effects were demonstrated through experiments in which participants read articles about a person being attacked. The articles were identical, except some described the attacks as hate crimes while others described them as random with no mention of hate as a motivation. The study found that those who read the about the hate crimes expressed greater feelings of anxiety and anger than those who read about the random crimes. These results suggest that "hate crimes are more impactful than other comparable crimes because they are deemed to be more threatening to the entire community, and this leads to greater levels of anxiety and anger." *Id*. at 24. Indeed, hate crimes close to home cause other minority groups in

the community to feel greater levels of anxiousness and vulnerability. As the study found, "[s]imply hearing about others' victimization – whether they are friends, friends of a friend, or even a complete stranger – can make people feel vulnerable, angry, and are likely to affect their behaviors." *Id*. at 20.

*Sentencing Recommendation*

Whitt needs to be sternly punished as his racially charged crime did not just destroy the Price Hill house, it tormented the victims and distressed the community. Previous convictions for similar racist conduct have failed to deter him as he committed and even more dangerous hate crime by involving the use of fire. Together the sentencing factors weigh against leniency. Accordingly, the United States request the Court sentence Whitt to the maximum 60 months permitted under his plea agreement, followed by 3 years of supervised release. Such a sentence achieves the goals of sentencing by adequately protecting the public from Whitt and providing just punishment for his offense. Should Whitt care to rehabilitate himself, he needs to start by addressing the numerous shortcomings in his own life, then he may genuinely appreciate the wrongfulness of his bigotry.

**III.     Restitution**

The United States objects to the Presentence Reports ("PSR") calculation of restitution owed by Whitt. By way of background, the Initial Presentence Report ("PSIR") called for $0 in restitution owed by Whitt under the reasoning that the Go Fund Me campaign covered all the victims losses. (PSIR ¶ 164 & Sentencing Recommendation Page 2.) The United States then filed the objection included in the PSR regarding the restitution. Specifically, the United States stated the appropriate amount of restitution would be $68,100: $60,000 to restore the Price Hill

house and $8,100 in lost rental income.[1] Subsequently, the PSR was amended to reflect restitution in the amount of $36,466.98: $6,250 to the victims for lost rental income and $30,216.98 to their insurance company. (PSR ¶ 165.) However, the PSR continues to assert the victims are not entitled to compensation for the additional cost of restoring the Price Hill house because of the proceeds from the Go Fund Me campaign. (PSR Sentencing Recommendation Page 2.) The United States objects to this calculation and reiterates the amount of restitution owed is $66,250: The victims should receive $36,033.02 followed by their insurance company receiving $30,216.98.

Pursuant to the Mandatory Victim's Restitution Act (MVRA), 18 U.S.C. § 3663A, restitution is mandatory in this case. The MVRA "requires a defendant to pay restitution to identifiable victims who have suffered either physical injuries or pecuniary losses as a result of certain criminal offenses." *United States v. Sawyer*, 825 F.3d 287, 292 (6th Cir. 2016). "While the determination of the restitution amount is by nature an inexact science, ... under the MVRA, the district court is directed to engage in an expedient and reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim[.]" *United States v. Jones*, 747 F. App'x 348, 360 (6th Cir. 2018) citing *United States v. Huff*, 609 F.3d 1240, 1248 (11th Cir. 2010) (citations and internal quotation marks omitted).

"Specifically, restitution is mandatory—regardless of a defendant's financial situation—when a defendant is convicted of a crime of violence[.]" *Id.*; *see* 18 U.S.C. § 3663A(c). In this case, Mr. Whitt's conviction for Criminal Interference with the Right to Fair Housing, 42 U.S.C. § 3631 is a crime of violence as it has as an element "the use, attempted use or threatened use of physical force against the person or property of another". 18 U.S.C. § 16(a); 18 U.S.C. §

---

[1] The United States now agrees the lost rental income should be $6,250.

3663A(c); *see also United States v. Whittington*, 721 Fed. Appx. 713 (9th Cir. 2018)(Affirming 42 U.S.C. § 3631 is a crime of violence under 18 U.S.C. § 924(c).)

Pursuant to the MVRA, the Mr. Whitt is required to "return the property" to the victims or if that is "impracticable … pay an amount equal to … the value of the property on the date of the damage, loss, or destruction." 18 U.S.C. § 3663A(b)(1)(A) & (B)(i)(I). The restitution must also cover the "full amount" of the victims losses. 18 U.S.C. § 3664(f)(1)(A). Moreover, the amount of restitution may not be reduced by money the victims received from their insurance company or any other outside contributions. 18 U.S.C. § 3664(f)(1)(B) ("In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution.") *see United States v. Sizemore*, 850 F.3d 821, (6th Cir. 2017) (Insurance payments to victims by defendant's insurance does not reduce restitution owed by defendant.)

Here, any money provided to the victims through their own insurance and the Go Fund Me campaign cannot be used to lower the restitution owed by Mr. Whitt. 18 U.S.C. § 3664(f)(1)(B). Indeed, the PSR recognizes this by requiring Whitt to pay $30,216.98 to the victims insurance company. (PSR ¶ 165.) Similarly, the Go Fund Me proceeds cannot be said to have compensated the victims for the defendant's damage to the Price Hill house or be used to lower the restitution owed by Whitt. 18 U.S.C. § 3664(f)(1)(B); *See Sizemore*, 850 F.3d at 829 (No evidence the defendant's insurance payments covered the same losses owed under restitution.) The Go Fund Me story touched on numerous topics including their sons own suicide in addition to the damage to the Price Hill house. As detailed in the comments with donations on the site, individuals donated money for a myriad of reasons. While some may have hoped to help rehabilitate the Price Hill house, others donated to help financially support the victims of a

hate crime, or merely to financially speak out against racism or hate crimes. Unquestionably, none of the donations were made with the intent of reducing the amount of restitution the perpetrator of the hate crime had owed.

Accordingly, Mr. Whitt owes the full amount of restitution to the victims regardless of any money they have received. Here, the victims report it cost them approximately $60,000 to rehabilitate the Price Hill house. Given the extensive damage caused by Whitt, this is not an unreasonable sum. *United States v. McNeil*, 744 F. App'x 941, 943 (6th Cir. 2018.)("[T]he district court need not make specific findings in calculating restitution, the information relied upon by the district court in reaching the final calculation must have sufficient indicia of reliability to support its probable accuracy.") They also lost rental income from December through March due to the defendant's damage. Those months represents an additional loss of $6,250 ($500 per month for the downstairs unit and $850 for the upstairs unit.). In total, the victims losses in this case are approximately $66,250. Therefore, the Court must order Mr. Whitt pay restitution in the amount of $66,250. The victims should receive $36,033.02 followed by their insurance company receiving $30,216.98.

**IV. Conclusion**

In conclusion, the United States recommends a sentence consistent with the defendant's plea agreement and the recommendation made herein.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

s/ *Kyle J. Healey*
Kyle J. Healey (0083794)
Assistant United States Attorney

221 E. Fourth Street, Suite 400<br>
Cincinnati, Ohio 45202<br>
Office: (513) 684-3711<br>
E-mail: kyle.healey@usdoj.gov

<u>Certificate of Service</u>

I certify that I filed the foregoing with the Court's CM/ECF system this 30th day of August, 2019.

s/ *Kyle J. Healey*
Kyle J. Healey
Assistant United States Attorney